UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ALEXA HAMAUEI                                        CIVIL ACTION

VERSUS                                               NO. 10-85

MICHAEL J. ASTRUE, COMMISSIONER                      SECTION "B" (2)
OF SOCIAL SECURITY ADMINISTRATION

## FINDINGS AND RECOMMENDATION

Plaintiff, Alexa Hamauei, seeks judicial review pursuant to Section 405(g) of the

Social Security Act (the "Act") of the final decision of the Commissioner of the Social

Security Administration (the "Commissioner"), denying plaintiff's claim for disability

insurance benefits ("DIB") under Title II of the Act.  42 U.S.C. §§ 405(g), 423.  This

matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)

and Local Rule 73.2E(B).

I.     PROCEDURAL HISTORY

Hamauei filed an application for DIB on July 30, 2007, alleging disability since

December 1, 2006, due to a fracture of the tibia in her left leg and subsequent surgeries.

(Tr. 10, 84-89, 110).  After her application was denied, she requested a hearing before

an Administrative Law Judge ("ALJ"), which was held on March 2, 2009.  (Tr. 17-41).

On May 28, 2009, the ALJ issued a decision denying plaintiff's application.  (Tr. 10-16).

After the Appeals Council denied review on December 29, 2009, the ALJ's decision

became the final decision of the Commissioner for purposes of this court's review.

(Tr. 1-3).

II.   STATEMENT OF ISSUES ON APPEAL

Plaintiff contends that the ALJ made the following errors:

A.   The ALJ failed to apply the proper legal standard to determine plaintiff's credibility.

B.   The ALJ's determination of plaintiff's residual functional capacity is not supported by substantial evidence because (1) the ALJ did not factor in the seriousness of plaintiff's injury and (2) the ALJ failed to give controlling weight to the opinion of plaintiff's treating physician.

C.   The ALJ erred in relying upon a hypothetical question to the vocational expert that is not supported by substantial evidence.

III.   ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following relevant findings:

1.   Hamauei has not engaged in substantial gainful activity since December 1, 2006.

2.   She has a severe impairment, consisting of status post open reduction internal fixation of the left tibia, as a result of a fracture sustained in a fall from a ladder on December 1, 2006.

3.   Plaintiff has the residual functional capacity to perform sedentary work, provided that she can elevate the left leg below waist level at will.

4.   Her medically determinable impairment could reasonably be expected to cause some of the alleged symptoms, but her statements concerning the intensity, persistence and limiting effects of her symptoms are not

supported by the medical evidence and are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

5.  The medical opinion of plaintiff's treating physician is inconsistent with the other medical evidence of record and is not accorded "controlling weight." Because the opinion appears to be a patient advocacy statement rather than a medical source statement based on objective signs and findings, the doctor's opinion that Hamauei will be unable to return to work for more than a year is accorded little weight.

6.  Plaintiff is capable of performing her past relevant work as a secretary, sedentary duty, skilled.

(Tr. 12-15).

IV.  <u>ANALYSIS</u>

A.  <u>Standards of Review</u>

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence.  <u>Perez v. Barnhart</u>, 415 F.3d 457, 461 (5th Cir. 2005); <u>Waters v. Barnhart</u>, 276 F.3d 716, 716 (5th Cir. 2002); <u>Loza v. Apfel</u>, 219 F.3d 378, 390 (5th Cir. 2000).  Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Perez</u>, 415 F.3d at 461; <u>Loza</u>, 219 F.3d at 393.  This court may not "reweigh the evidence

in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000).  The Commissioner, rather than the courts, must resolve conflicts in the evidence.  Id.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible.  See Arkansas v. Oklahoma, 503 U.S. 91 (1992).  Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it.  Perez, 415 F.3d at 461.  Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive.  Id.; Newton, 209 F.3d at 452; Martinez v. Chater, 64 F.3d 172, 173 (5th Cir. 1995).

To be considered disabled and eligible for DIB, plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A).  The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability.  20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2009).  The regulations include a five-step evaluation process for determining whether an impairment prevents

4

a person from engaging in any substantial gainful activity.  Id. §§ 404.1520, 416.920;

Perez, 415 F.3d at 461; Waters, 276 F.3d at 716; Loza, 219 F.3d at 393.[1]  The five-step

inquiry terminates if the Commissioner finds at any step that the claimant is or is not

disabled.  Perez, 415 F.3d at 461.

The claimant has the burden of proof under the first four parts of the inquiry.  If

he successfully carries this burden, the burden shifts to the Commissioner to show that

other substantial gainful employment is available in the national economy that the

claimant is capable of performing.  When the Commissioner shows that the claimant is

---

[1]The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled.  Id. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence.  Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated.  If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled.  Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy.  If the claimant cannot meet the demands, he or she will be found disabled.  Id. §§ 404.1520(f)(1), 416.920(f)(1).  To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns.  When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled.  Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 ("Medical-Vocational Guidelines").

capable of engaging in alternative employment, the burden of proof shifts back to the

claimant to rebut this finding.  Id.; Newton, 209 F.3d at 453.

The court "weigh[s] four elements of proof when determining whether there is

substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions

of treating and examining physicians; (3) the claimant's subjective evidence of pain and

disability; and (4) [her] age, education, and work history." Martinez, 64 F.3d at 174.

B.      Factual Background

Plaintiff testified that she works about five hours per week and drives herself on

a ten-minute drive to her job.  She said she lives alone and does her own shopping,

cooking and cleaning.  (Tr. 23).  She stated that she cannot walk or stand for long periods

of time.  She testified that her leg swells when she shops for groceries, so she only buys

the minimum of what she needs, and she has to hold on to the grocery basket while she

shops.  She said she only cooks things that are quick and easy in the microwave.  She

explained that she used to prepare complete meals, but now she is unable to stand long

enough to shop for or to cook complete meals.

Hamauei testified that doing the laundry is somewhat difficult and that her sister-

in-law occasionally helps her load and unload the laundry.  (Tr. 24).  Plaintiff said she

occasionally cleans her house, but she cannot do a lot.  She stated that she does not shop

for clothes because she cannot afford it, and that recently, when she tried to walk from

Macy's to Penney's, it took her a while to do it and to get back to Macy's, where her car was parked.  She said she experienced pain from her knee to her ankle while walking.

Plaintiff stated that she underwent physical therapy three times per week for about a year after her doctor said she could begin walking on her foot, and that the therapy had helped.  (Tr. 25).  She said the doctor told her that her leg will never be 100 percent of what it used to be, but that it might reach 95 percent.  She stated that she thought her leg had reached about 90 percent of its former capability.  (Tr. 25-26).  Hamauei testified that she still has trouble walking because her left knee gives out and she cannot stand on that leg for any period of time.  She said she does strengthening exercises almost every day and rides a stationary bike.

Plaintiff stated that she can stand for ten minutes and walk for five to ten minutes, but cannot walk any long distance because of pain in her leg.  She does not feel that she can put enough weight on her leg to stand or walk for a longer period.  She also said she does not have good balance on that leg and she has to be very careful and take it slowly when going up or down steps.  (Tr. 26).

Hamauei testified that she has some painkillers prescribed by her doctor, but she mostly takes Aleve and Tylenol daily.  She stated that she can sit longer than she can stand, but that she needs to elevate her leg because she cannot keep it in one position for more than 15 minutes.  She said that, when she stands up, she has to wait to get the

strength back in her leg before she can walk.  She said she can only sit for 10 to 15 minutes unless she is in a lounge chair where she can stretch out her leg.  She stated that she gets numbness or a burning sensation in her leg when she keeps it bent.  (Tr. 27).

Plaintiff said she would be unable to sit for a full day, even if her leg was elevated, because she is very uncomfortable and gets a burning sensation in her leg when keeping it in either position.  She testified that, when she is at home, she lies down for a while, then gets up and walks around for a few minutes, then lies down again.  She said that she lies down for an hour at a time, for a few hours per day in total.

Hamauei stated that she is working part-time as a bookkeeper.  She said that bookkeeping is part of what she used to do.  She testified that she worked as a meeting planner and was on her feet, doing special events or driving to and from the airport all the time.  (Tr. 28).  She said she learned bookkeeping because she billed her clients for the programs.  She stated that she has no trouble completing her tasks at work now.  She testified that, before her accident, she was very active in her job and in maintaining her house and yard, and that she cannot do any of those activities any more.  (Tr. 28-29).  She stated that she is 55 years old and completed two years of college.  (Tr. 29).

Plaintiff testified that she used to play golf and a little tennis and used to go dancing and to other social events with friends, but that she no longer can do any of those things.  She said she can walk only five to ten feet before she experiences burning pain

8

and discomfort from the back of her left knee to her ankle.  She stated that she cannot lift more than ten pounds because she does not feel that she has enough support in both legs and her back to walk while carrying a lot of weight.  (Tr. 30).

Hamauei testified that she could not have worked full-time by December 2007 because she was still taking physical therapy and having a lot of difficulty getting around. (Tr. 31).  She stated that she had worked part-time as a bartender for four years before the accident, earning about $50 per week.  (Tr. 33).

     C.    <u>Vocational Expert Testimony</u>

A vocational expert, Crystal Younger, testified at the hearing.  She stated that plaintiff's past relevant work as a secretary is sedentary, skilled work, while plaintiff's past job as an event planner is light, skilled work, according to the Dictionary of Occupational Titles.  (Tr. 33-34).  She said that Hamauei's application for benefits indicated that her past relevant work as a secretary was classified as light, while her past work as an event planner was classified as medium, so that both jobs were performed at higher exertion levels than the Dictionary of Occupational Titles provides for those jobs.

The ALJ posed a hypothetical of an individual with plaintiff's age, education and work history who could perform the full range of sedentary work.  The vocational expert testified that the person could perform the past relevant work of secretary, as generally performed and as described in the Dictionary of Occupational Titles. (Tr. 34).  When the

ALJ modified the hypothetical to restrict the individual to sedentary work that would allow her to elevate her left leg below waist level at will, Younger said that her testimony would not change.  (Tr. 35).  In response to another hypothetical question, Younger testified that a person who was unable to sit, stand or walk for up to eight hours in a workday because she had to lie down each day for more than the usual two 15-minute daily break periods and the usual 30 or 60-minute lunch period would not be able to work at any job.  (Tr. 35-36).

Upon cross-examination by plaintiff's attorney, the vocational expert testified that it would be more difficult to perform a job if the hypothetical person had to elevate her leg to waist level because the leg would not fit under a desk.  Younger stated that the numbers of available jobs would be significantly reduced because the person would need an accommodation to allow her to put her leg up on another chair.  (Tr. 36).  Plaintiff's attorney modified the ALJ's first hypothetical to include a restriction that the individual could not complete the assigned work because she is unable to concentrate as a result of pain.  The vocational expert testified that a person who cannot complete the work would not be able to maintain employment, and that skilled jobs like secretary require some level of concentration.  (Tr. 37).  She explained that the mental skill level of secretarial work includes reasoning skills at a ninth through twelfth grade level and mathematical skills at a seventh to eighth grade level.  (Tr. 37-38).  She said that the job includes a

variety of duties, such as dealing with people and making judgments and decisions, but that it is not a very high level of concentration and decision-making.  (Tr. 38).

D.    Medical Evidence

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence.  (Tr. 13-15).  I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

E.    Plaintiff's Appeal

1.    The ALJ applied the proper legal standard to determine plaintiff's credibility.

The ALJ found that plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not supported by the medical evidence and were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment that Hamauei is capable of performing sedentary work, as long as she can elevate her left leg below waist level.  Hamauei argues that the ALJ failed to apply the proper legal standard to determine plaintiff's credibility.

The ALJ has the responsibility to evaluate the credibility of witnesses, Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002), and "credibility conclusions are 'precisely the kinds of determinations that the ALJ is best positioned to make.'"  Spruill v. Astrue,

11

299 F. App'x 356, 358 (5th Cir. 2008) (quoting Falco v. Shalala, 27 F.3d 160, 164 (5th

Cir. 1994)).  Thus, the ALJ's credibility evaluation is entitled to considerable deference

by this court.  McKnight v. Astrue, 340 F. App'x 176, 181 (5th Cir. 2009); Bedford v.

Astrue, 236 F. App'x 957, 962 (5th Cir. 2007); Newton, 209 F.3d at 459.  The ALJ's

explanation of her reasons for finding plaintiff not entirely credible is all that is required.

 Spruill, 299 F. App'x at 358; Bedford, 236 F. App'x at 962; Falco, 27 F.3d at 163-64;

Godbolt v. Apfel, No. 98-1680, 1999 WL 179476, at *9 (E.D. La. Mar. 31, 1999)

(Vance, J.); accord James J. Flanagan Stevedores, Inc. v. Gallagher, 219 F.3d 426, 430

& n.8 (5th Cir. 2000) (citing Falco, 27 F.3d at 163).

> Whether pain is disabling is also an issue for the ALJ,
>
> who has the primary responsibility for resolving conflicts in the evidence.
> It is within the ALJ's discretion to determine the disabling nature of a
> claimant's pain, and the ALJ's determination is entitled to considerable
> deference.  The determination whether an applicant is able to work despite
> some pain is within the province of the administrative agency and should
> be upheld if supported by substantial evidence.  Moreover, pain must be
> constant, unremitting, and wholly unresponsive to therapeutic treatment to
> be disabling.  Subjective complaints of pain must also be corroborated by
> objective medical evidence.

Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001) (citing Carrier v. Sullivan,

944 F.2d 243, 247 (5th Cir. 1991); Wren v. Sullivan, 925 F.2d 123, 128 (5th Cir. 1991);

James v. Bowen, 793 F.2d 702, 706 (5th Cir. 1986); Jones v. Heckler, 702 F.2d 616, 622

(5th Cir. 1983); <u>Falco</u>, 27 F.3d at 163; <u>Houston v. Sullivan</u>, 895 F.2d 1012, 1016 (5th

Cir. 1989)).

> As a matter of law, the mere fact that working may cause a claimant pain or discomfort does not mandate a finding of disability. Additionally, the mere existence of pain does not automatically bring a finding of disability. It must be determined whether substantial evidence indicates an applicant can work despite being in pain or discomfort.

<u>Davis v. Astrue</u>, No. H-08-1993, 2009 WL 3190470, at *15 (S.D. Tex. Sept. 29, 2009)

(citing <u>Chambliss</u>, 269 F.3d at 522; <u>Harper v. Sullivan</u>, 887 F.2d 92, 96 (5th Cir. 1989);

<u>Brown v. Bowen</u>, 794 F.2d 703, 707 (D.C. Cir. 1986); <u>Johnson v. Heckler</u>, 767 F.2d 180,

182 (5th Cir. 1985); <u>Hames v. Heckler</u>, 707 F.2d 162, 166 (5th Cir. 1983); <u>Epps v.</u>

<u>Harris</u>, 624 F.2d 1267, 1274 (5th Cir. 1980); <u>Owens v. Heckler</u>, 770 F.2d 1276, 1281 (5th

Cir. 1985)).

The ALJ in this case explained that Hamauei's allegations of severe pain and

extreme functional limitations were not fully supported by the medical evidence. The

ALJ accurately summarized the medical records. Based on that evidence, she concluded

that, following plaintiff's fall from a ladder on December 1, 2006 and fracture of her left

tibia, Hamauei underwent two surgeries and had a wound dehiscence and infection that

resolved. By September 2007, the incision was healed and plaintiff had

> pretty good range of motion with only occasional effusion. She was attending physical therapy and weight bearing with some diminished speed of ambulation but there were no neurological deficits. More importantly,

the only pain medication taken was Tylenol for discomfort which she rated
as just 5 out of 10.  An x-ray in January 2008 showed everything in good
position and alignment.

(Tr. 14).  The ALJ also noted that Hamauei has been able to work part-time without any
difficulty and that she estimated the extent of her own recovery at 90 percent after one
year of physical therapy, but believes that she can improve.

The ALJ considered plaintiff's testimony about her subjective complaints, her
activities of daily living and her need for medications, together with the objective
medical evidence.  The ALJ's findings concerning plaintiff's credibility are substantially
supported by the record, including the following.  On December 19, 2006, plaintiff
underwent surgery to remove the previously placed external fixator on her leg and to
perform an open reduction internal fixation of her left tibial plateau fracture.  (Tr. 199).
On January 15, 2008, a radiologist stated that the postoperative position and alignment
of plaintiff's left proximal tibia were satisfactory and unchanged since the previous x-
rays on November 29, 2007.  (Tr. 243).  On the same date, her treating orthopedic
surgeon, Frederic B. Wilson, IV, M.D., reviewed the x-ray and noted that the medial and
lateral plates were in good position and that "the fractures appear to maintain its [sic]
alignment."  (Tr. 240).  Dr. Wilson observed that Hamauei continued her exercises to
increase her range of motion and occasionally had mild effusion around her left "knee,
so she would increase her activity."  He noted that she had a "pretty good range of

14

motion and was able to weightbear [sic]."   Although he told plaintiff that her leg
probably would not regain 100 percent of its ability, he noted that she could flex the knee
90 to 100 degrees[2] "with just a very slight loss of full extension."   Her main concern at
the time was her decreased speed of ambulation. He concluded that "[o]verall, she
continues to improve."  He advised her to continue her exercises and activities and to
return to see him in two months for additional x-rays and evaluation.  (Tr. 240).

Hamauei did not return to see Dr. Wilson until September 30, 2008.  At that time,
she had finished with physical therapy and rated her pain intensity as 5 to 6 on a scale of
10.  (Tr. 252).  Dr. Wilson noted that she was fully weight-bearing on both legs.  He
stated that radiographs of her left knee showed mild degenerative changes, good
alignment and good joint space.  His assessment was (1) status post open reduction
internal fixation left tibial plateau fracture – Schatzker VI[3] and (2) continued gait
disturbance related to residual pain.  His plan was that she could continue activities as
tolerated, with full weight-bearing of all extremities.  He prescribed no pain medication.

_____

[2]The normal range of knee flexion is to 130 degrees.  The Merck Manual of Diagnosis and
Therapy 2749, Table 336-1 (Mark H. Beers, ed.-in-chief, 18th ed. 2006).

[3]The Schatzker classification system for tibial plateau fractures of the knee assists radiologists
and orthopedic surgeons to "separate the fractures into groups with similar mechanisms and patterns
which will have similar treatment options."  Adam P. Myhre, M.D. & Michael L. Richardson, M.D., "A
Web-based Tutorial for Teaching the Schatzker Classification for Tibial Plateau Fractures" (Univ. of
Wash., Dep't of Radiology), http://uwmsk.org/schatzker/ (last visited October 1, 2010).

(Tr. 253).  Dr. Wilson stated that he told Hamauei that they could consider "a scope" (presumably arthroscopy) if she had problems with swelling.  He instructed her to take Aleve twice a day and to call if she wanted a refill of Tramodol,[4] which she could use "as a back-up."  (Tr. 254).  There are no medical records of any treatment after this visit through the date of the ALJ's decision on May 28, 2009.

A claimant's lack of need for medication or failure to seek treatment is a relevant factor to consider in determining the severity of an alleged impairment and may be used in conjunction with the medical reports to discount plaintiff's complaints of disabling pain or other limitations.  Doss v. Barnhart, 137 F. App'x 689, 690 (5th Cir. 2005); Anthony v. Sullivan, 954 F.2d 289,  295 (5th Cir. 1992); Griego v. Sullivan, 940 F.2d 942, 945 (5th Cir. 1991); Villa v. Sullivan, 895 F.2d 1019, 1024 (5th Cir. 1990).

Because the ALJ explained her reasons for finding plaintiff less than credible and the reasons are substantially supported by the medical records, this assignment of error lacks merit.

---

[4]Tramadol hydrochloride is the generic name for a prescription drug, Ultram.  Ultram is a synthetic opioid analgesic that is indicated for the management of moderate to moderately severe chronic pain.  Physicians' Desk Reference 2693 (64th ed. 2010).

2.    The ALJ's determination of plaintiff's residual functional capacity
      is supported by substantial evidence.

At step four of the sequential evaluation, the ALJ found that plaintiff had the residual functional capacity to perform sedentary work, provided that she could elevate her left leg below waist level.  Hamauei argues that the determination of her residual functional capacity is not supported by substantial evidence because (a) the ALJ did not factor in the seriousness of her injury and (b) the ALJ failed to give controlling weight to her treating physician's opinion.

As to her first sub-assignment of error, Hamauei contends that the ALJ did not acknowledge the seriousness of her left tibial plateau fracture, which was a comminuted[5] fracture classified as Schatzker VI (the most severe of the classifications in the Schatzker system), with associated soft tissue injury.  Relying on the pre-operative CAT scan of her leg and on her own testimony about her limitations, she argues that her injury had not healed sufficiently for her to be able to perform the full range of sedentary work.

The ALJ reviewed the medical records and acknowledged that Hamauei has a severe impairment, consisting of status post open reduction internal fixation of the left tibia.  The ALJ disagreed with the initial administrative disability examiner's conclusion

_____

[5]"Comminuted" means "broken or crushed into small pieces."  Dorland's Illustrated Medical Dictionary 382 (29th ed. 2000).

17

that plaintiff failed to establish that her severe impairment could be expected to last for at least 12 months.  The ALJ found that, as of the date of her decision, Hamauei still had ongoing pain that more than minimally limits her vocational abilities.  (Tr. 15, 42-43).

However, mere diagnosis of an impairment does not establish plaintiff's disability claims.  Martin v. Chater, No. 95 C 0245, 1995 WL 505955, at *6 (N.D. Ill. Aug. 23, 1995) (citing Anderson v. Sullivan, 925 F.2d 220, 222 (7th Cir. 1991)); accord Harris v. Barnhart, No. 02-55540, 2003 WL 21054733, at *2 (9th Cir. 2003); Estok v. Apfel, 152 F.3d 636, 640 (7th Cir. 1998); Jones v. Sullivan, 954 F.2d 125, 128 (3d Cir. 1991); Arroyo v. Secretary of Health & Human Servs., 932 F.2d 82, 87-88 (1st Cir. 1991); Hames v. Heckler, 707 F.2d 162, 165 (5th Cir. 1983).  Plaintiff "must show that she was so functionally impaired by her [diagnosed impairment] that she was precluded from engaging in any substantial gainful activity."  Id.; accord Anthony v. Sullivan, 954 F.2d 289, 293 (5th Cir. 1992).

In the instant case, while acknowledging the severity of plaintiff's impairment, the ALJ found that Hamauei's allegations about her functional limitations were not credible. This finding is supported by substantial evidence that her fracture had healed, her tibia was well aligned on x-rays with no evidence of continued disunion and she had regained most of her range of motion, as discussed in the preceding section.  Accordingly, this sub-assignment of error lacks merit.

As to her second sub-assignment of error, plaintiff argues that the ALJ should have given controlling weight, or at least substantial deference, to her treating physician's opinion.  Specifically, Hamauei told Dr. Wilson on September 18, 2007 that she had been denied Social Security benefits.  (Tr. 241).  Dr. Wilson stated in his progress notes:  "I have told her to reapply.  I told her that it may be longer than a year before she is able to go back to the type of work that she was doing before."  (Tr. 242).  The ALJ accorded "little weight" to Dr. Wilson's statement because the ALJ found it was "inconsistent with the other medical evidence of record" and "contradicted by the x-rays in January 2008 that show solid union.   Because there are no clinical signs or findings of any complications, nonunion or infections, Dr. Wilson's opinion appears to be a patient advocacy statement rather than a medical source statement based on objective signs and findings."  (Tr. 14-15).

A physician's statement that a patient is disabled does not mean that the patient is disabled for purposes of the Act because that is a determination that may be made only by the Commissioner.  Frank v. Barnhart, 326 F.3d 618, 620 (5th Cir. 2003); Chambliss, 269 F.3d at 522; Tamez v. Sullivan, 888 F.2d 334, 336 n.1 (5th Cir. 1989).

> [S]ome opinions by physicians are not medical opinions, and as such have no "special significance" in the ALJ's determination.  Among the opinions by treating doctors that have no special significance are determinations that an applicant is "disabled" or "unable to work."  These determinations are legal conclusions that the regulation describes as "reserved to the

> Commissioner." . . .  The doctor's opinion [that plaintiff could not work]
> was not a medical opinion within the meaning of the regulation.

Frank, 326 F.3d at 620 (quoting 20 C.F.R. § 404.1527(e), (1) & (e)(3)); accord Brunson

v. Astrue, No. 09-41148, 2010 WL 2802372, at *2 (5th Cir. July 16, 2010); Miller v.

Barnhart, 211 F. App'x 303, 305 (5th Cir. 2006).

Initially, Dr. Wilson did not specify what "type of work that [plaintiff] was doing

before" her accident.  The record shows that Hamauei was working as a special events

planner and part-time bartender at that time.  (Tr. 28-29, 96, 164).  The vocational expert

testified that the event planner job was classified as light duty by the Dictionary of

Occupational Titles, but that it was medium duty as Hamauei had performed it.[6]  The

ALJ found that Hamauei could only perform her past relevant work of secretary at a

sedentary level, which is a lower exertional level than light or medium.  Based on

plaintiff's light or medium duty jobs at the time she was injured and the Fifth Circuit's

case law concerning the weight of a physician's nonmedical opinion, the ALJ properly

accorded little weight to Dr. Wilson's opinion that plaintiff could not perform "the type

of work that she was doing before."

---

[6]The vocational expert did not testify about plaintiff's part-time work as a bartender because it
was not substantial gainful activity for purposes of the Act.  However, to the extent that Dr. Wilson may
have known that plaintiff had worked as a bartender, bartending is classified as light work by the
Dictionary of Occupational Titles.  Dictionary of Occupational Titles § 312.474-010, 1991 WL 672698;
id. § 312.477-010, 1991 WL 672699.

Furthermore, "[t]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." Newton, 209 F.3d at 455 (citations omitted). Although the medical opinions of treating physicians are usually entitled to great weight, id. at 455, the opinion of any physician may be assigned little or no weight when good cause is shown. Good cause permits an ALJ to discount the weight of an opinion when it is conclusory; unsupported by medically acceptable clinical, laboratory, or diagnostic techniques; or otherwise unsupported by the evidence. Id. at 455-56 (citations omitted).

Hamauei argues that Dr. Wilson's opinion is well supported by medically acceptable clinical, laboratory, or diagnostic techniques "based on the x-ray studies from September 2007," nine months after her second surgery, and the preoperative CT scans from December 2006. Record Doc. No. 14, plaintiff's memorandum at p. 12. She also argues that the ALJ mischaracterized the January 15, 2008 x-ray results and the ALJ substituted her own medical opinion when she said that those x-rays showed a "solid union." Hamauei argues that the x-ray results on January 15, 2008 showed only that "the fractures appear to maintain its [sic] alignment" (Tr. 243), as Dr. Wilson stated, and that none of the x-ray results showed a "solid union."

The ALJ's finding that Dr. Wilson's statement was inconsistent with the rest of the medical records is substantially supported by the entirety of the medical record. Although none of the x-ray results use the words "solid union," neither do they indicate

any significant difficulties with the healing of the fracture.  Specifically, Dr. Wilson stated that the x-ray on September 18, 2007 showed that the plates on both sides of the tibia were in good position and the joint space was reasonably well preserved.  Dr. Wilson saw no deformity.  (Tr. 241).  On January 15, 2008, Dr. Wilson again said that the x-ray taken that date showed that the medial and lateral plates were in good position and "the fractures appear to maintain its [sic] alignment."  (Tr. 240).  In his notes of plaintiff's January 15 and September 30, 2008 visits, Dr. Wilson observed that she was able to bear weight on all extremities and to continue her activities as tolerated, including exercising and riding a stationary bike.  The records show that Hamauei continuously improved after her second surgery until she could walk, although not quickly or for long distances; she could flex her left knee 90 to 100 degrees with a very slight loss of full extension; and she rated her pain as 5 to 6 on a scale of 10.  Dr. Wilson did not recommend any additional therapy or prescribe any medication at these visits.  (Tr. 240, 252-53).  The medical records are therefore consistent with the ALJ's assessment that Hamauei could perform sedentary work.

Thus, the evidence from the entirety of the record provides good cause for the ALJ's decision to afford no weight to Dr. Wilson's opinion that plaintiff could not work.  Accordingly, this argument lacks merit.

3.    The ALJ did not err in relying upon a hypothetical question that
      incorporated the limitations the ALJ found credible.

The ALJ found at step four of the sequential evaluation that plaintiff has the residual functional capacity to perform sedentary work, except that she must be able to elevate her left leg below waist level at will.  Step four "directs a finding that the claimant is not disabled if the claimant's impairments do not 'prevent [the claimant] from doing past relevant work.'"  Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995) (quoting 20 C.F.R. § 404.1520(e) (1995)).  The ALJ relied upon the vocational expert's opinion that plaintiff is capable of performing her past relevant work as a secretary at the sedentary level.  Hamauei argues that the ALJ erred in relying upon a hypothetical question to the vocational expert that is not supported by substantial evidence.  Specifically, plaintiff contends that, because the vocational expert testified that Hamauei actually performed her past relevant work as a secretary at the light, rather than the sedentary, level, the ALJ erred by finding that she could perform her past relevant work as a secretary.  Plaintiff also argues that the ALJ erred by not accepting the vocational expert's testimony that a person who could not sit, stand or walk for eight hours with normal rest breaks and who had to lie down for one hour each day would not be able to maintain employment, or that a person with severe pain could not perform sedentary work.

Plaintiff's first argument is foreclosed by Fifth Circuit precedent.  The vocational expert in this case testified that a claimant with the residual functional capacity found by the ALJ is capable of performing plaintiff's past relevant work as a secretary at the sedentary level, which is how the job is generally performed.  See Dictionary of Occupational Titles § 201.362-030, 1991 WL 671672 (4th ed. rev. 1991) (secretarial tasks are performed at sedentary level).  Although the vocational expert testified that Hamauei's past secretarial job was light duty as actually performed, "[t]he mere inability of a claimant to perform certain requirements of [her] past job does not mean that [s]he is unable to perform 'past relevant work' as that phrase is used in the regulations; rather, the Commissioner may also consider the description of the claimant's past work as such work is generally performed in the national economy."  Leggett, 67 F.3d at 564-65 (quotation omitted) (emphasis added); see also Orphey v. Massanari, 268 F.3d 1063, 2001 WL 877596, at *1 (5th Cir. 2001) (quoting Villa, 895 F.2d at 1022) ("To determine whether [plaintiff] could perform her past relevant work, the ALJ was required to assess the physical demands of that work.  'This determination may rest on descriptions of past work as actually performed or as generally performed in the national economy.  ALJs may take notice of job data in the Dictionary of Occupational Titles . . . .'").  Therefore, the ALJ did not err in finding that plaintiff could perform her past relevant work as a secretary, as generally performed.

As to plaintiff's second argument, the ALJ posed a hypothetical to the vocational expert that accounted for plaintiff's age, education, work experience and physical limitations that the ALJ found to be credible. Younger testified that such a claimant could perform a secretarial job. The expert also testified that the claimant could not perform any job if she was unable to sit, stand or walk for up to eight hours in a workday and needed to lie down for more than one hour each day. However, the ALJ did not accept that requirement as credible in her residual functional capacity assessment.

Plaintiff was represented by counsel at the hearing, and her counsel also questioned the vocational expert. An ALJ's hypothetical question is defective and will not be allowed to stand unless it reasonably incorporated all of the disabilities recognized by the ALJ, "and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question)." Bowling v. Shalala, 36 F.3d 431, 436 (5th Cir. 1994); accord Boyd v. Apfel, 239 F.3d 698, 706-07 (5th Cir. 2001).

In this case, plaintiff's attorney questioned the vocational expert about the effects of plaintiff's alleged additional impairments, consisting of a need to elevate her leg to waist level and an inability to concentrate as a result of pain. Younger testified that such

a claimant could not perform any jobs.  However, the ALJ found that the record did not support such limitations.  As previously discussed, the ALJ's credibility findings are substantially supported by the record.  The ALJ's hypothetical question and her reliance on the vocational expert's testimony are sufficient to support the finding that plaintiff can perform her past relevant work as a secretary.

Accordingly, this assignment of error lacks merit.

CONCLUSION

Substantial evidence supports the ALJ's findings concerning plaintiff's credibility and residual functional capacity.  The ALJ had good cause to give no weight to the nonmedical opinion of Dr. Wilson that plaintiff could not work and to accord little weight to Dr. Wilson's opinion to the extent it was inconsistent with the entirety of the medical records.  The ALJ did not err in relying upon a hypothetical question that incorporated the limitations the ALJ found to be credible.

**RECOMMENDATION**

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of

26

plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[7]

New Orleans, Louisiana, this ___12th___ day of October, 2010.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[7]<u>Douglass</u> referred to the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.