## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

ALEXA HAMAUEI                          CIVIL ACTION

VERSUS                                 NO: 10-85

MICHAEL J. ASTRUE,                     SECTION: "B"(4)
COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION

<u>ORDER AND REASONS</u>

Before the Court is Plaintiff's Objection to the Magistrate Judge's Report and Recommendation. (Rec. Doc. No. 17). Plaintiff, Alexa Hamauei, seeks review of the Magistrate decision upholding the denial of her claim for disability insurance benefits ("DIB") pursuant to Title 42 U.S.C. § 405(g). (Rec. Doc. No. 16). For the following reasons, **IT IS ORDERED** that Plaintiff's Objections to the Magistrate Judge's Report and Recommendation (Rec. Doc. No. 17) be **OVERRULED,** and the Magistrate Judge's Report and Recommendation is adopted as the opinion of the Court as it is supported by substantial factual evidence and applicable laws.

**<u>Procedural History</u>**

On July 30, 2007, Plaintiff filed an application for DIB under Title II of the Social Security Act, alleging disability since December 1, 2006 due to a fracture of the tibia in her left leg and subsequent surgeries. (Rec. Doc. No. 16 p. 1). After her application was denied, Plaintiff requested a hearing before an

Administrative Law Judge ("ALJ"), which was held on March 2, 2009. (Rec. Doc. No. 16 p. 1). On May 28, 2009, ALJ Jean Kerrins issued a decision denying Plaintiff's application for DIB. (Rec. Doc. No. 16 p. 1). Plaintiff sought timely review with the Appeals Council, which denied review on December 29, 2009. (Rec. Doc. No. 16 p. 1). The ALJ's decision became the final decision of the Commissioner of Social Security for purposes of this Court's review.

Plaintiff subsequently sought judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). (Rec. Doc. No. 16 p. 1). On October 12, 2010, United States Magistrate Judge Joseph C. Wilkinson, Jr. recommended that Plaintiff's complaint be **DISMISSED WITH PREJUDICE**. (Rec. Doc. No. 17 ps. 1-2). Plaintiff has submitted to this Court a Memorandum in Opposition to the Magistrate's Recommendation for Dismissal. (Rec. Doc. No. 17).

**<u>Facts of the Case</u>:**

**I. Factual Background**

Plaintiff is a fifty seven year old female with several years of college education. (Rec. Doc. No. 17 p. 2). Plaintiff has previous relevant work as a sales secretary, bartender, and a special events coordinator. (Rec. Doc. No. 17 p. 2). Plaintiff has not engaged in substantial gainful activity since December 1, 2006 because "[s]he has a severe impairment, consisting of status

2

post open reduction internal fixation of the left tibia, as a result of a fracture sustained in a fall from a ladder on December 1, 2006." (Rec. Doc. No. 16 p. 2).[1]  Plaintiff was fifty three years old at the time of the accident. (Rec. Doc. No. 17 p. 2).

On December 5, 2006, Plaintiff underwent external fixator surgery spanning the knee joint to the left lower extremity by Dr. Wilson, an orthopedic surgeon. (Rec. Doc. No. 17 p. 2).  Fourteen days later, on December 19, 2006, Plaintiff underwent surgery for removal of the previously placed external fixator on her leg and open reduction internal fixation of her left tibial plateau fracture. (Rec. Doc. No. 17 p. 3).  Plaintiff was subsequently treated for a non-healing dehiscent incision to her left lower extremity on January 8, 2007. (Rec. Doc. No. 17 p. 3).

Plaintiff was examined and evaluated by Dr. Wilson on September 18, 2007. (Rec. Doc. No. 17 p. 3).  Dr. Wilson reviewed Plaintiff's x-ray and noted that the medial and lateral plates were in good position, and that the "fractures appeared to maintain its [sic] alignment." (Rec. Doc. No. 16 p. 14).  Despite attending physical therapy sessions regularly to increase her range of motion, Dr. Wilson observed that Plaintiff "occasionally had mild effusion around her left knee." (Rec. Doc. No. 16 p. 14).

---

[1]Plaintiff has been working five hours per week as a part-time bookkeeper. However, the ALJ properly found that this work does not rise to the level of substantial gainful employment. (Rec. Doc. No. 17 p. 2).

Nevertheless, Dr. Wilson noted that Plaintiff had a "pretty good range of motion and was able to weightbear [sic]." (Rec. Doc. No. 16 pgs. 14-15).  Furthermore, although Dr. Wilson told Plaintiff that her leg probably would not regain 100 percent of its ability, he noted that she could flex the knee 90 to 100 degrees[2] "with just a very slight loss of full extension." (Rec. Doc. No. 16 p. 15).

Overall, Dr. Wilson concluded that Plaintiff "continues to improve."  (Rec. Doc. No. 16 p. 15).  Notwithstanding this evaluation, after Plaintiff told Dr. Wilson that she had been denied Social Security Benefits, Dr. Wilson stated in his progress notes: "I have told her to reapply.  I told her that it may be longer than a year before she is able to go back to the type of work that she was doing before." (Rec. Doc. No. 16 p. 19).

Plaintiff did not return to see Dr. Wilson until September 30, 2008.  (Rec. Doc. No. 16 p. 15).  By this time, Plaintiff had completed physical therapy, and rated her pain intensity as 5 to 6 on a scale of 10. (Rec. Doc. No. 16 p. 15). Dr. Wilson noted that she was fully weight-bearing on both legs. (Rec. Doc. No. 16 p. 15). He stated that radiographs of her left knee showed mild degenerative changes, good alignment, and good joint space. (Rec. Doc. No. 16 p. 15).  His assessment was status post open reduction

---

[2] The normal range of knee flexion is to 130 degrees. The Merck Manual of Diagnosis and Therapy 2749, Table 336-1 (Mark H. Beers, ed.-in-chief, 18th ed. 2006).

4

and internal fixation left tibial plateau fracture- Schatzker VI[3]
and continued gait disturbance related to residual pain. (Rec. Doc.
No. 16 p. 15). His plan was that she could continue activities as
tolerated, with full weight-bearing of all extremities. (Rec. Doc.
No. 16 p. 15). He prescribed no pain medication, but instructed her
to take over the counter pain medication twice a day and to call if
she wanted a refill of Tramodol, which she could use "as a backup."
(Rec. Doc. No. 16 p. 16).   There are no medical records of any
treatment after this visit through the date of the ALJ's decision
on May 28, 2009.   (Rec. Doc. No. 16 p. 16).

## II. Plaintiff's Testimony[4]

Plaintiff testified that she works about five hours per week
and drives herself on a ten-minute drive to her job. She said she
lives alone and does her own shopping, cooking and cleaning. She
stated that she cannot walk or stand for long periods of time. She
testified that her leg swells when she shops for groceries, so she
only buys the minimum of what she needs, and she has to hold on to
the grocery basket while she shops. She said she only cooks things
that are quick and easy in the microwave. She explained that she
used to prepare complete meals, but now she is unable to stand long
enough to shop for or to cook complete meals.

---

[3]Discussed in more detail *infra*.

[4]See (Rec. Doc. No. 17). Citations have been omitted.

[Plaintiff] testified that doing the laundry is somewhat difficult and that her sister-in-law occasionally helps her load and unload the laundry. Plaintiff said she occasionally cleans her house, but she cannot do a lot. She stated that she does not shop for clothes because she cannot afford it, and that recently, when she tried to walk from Macy's to Penney's, it took her a while to do it and to get back to Macy's, where her car was parked. She said she experienced pain from her knee to her ankle while walking.

Plaintiff stated that she underwent physical therapy three times per week for about a year after her doctor said she could begin walking on her foot, and that the therapy had helped. She said the doctor told her that her leg will never be 100 percent of what it used to be, but that it might reach 95 percent. She stated that she thought her leg had reached about 90 percent of its former capability. [Plaintiff] testified that she still has trouble walking because her left knee gives out and she cannot stand on that leg for any period of time. She said she does strengthening exercises almost every day and rides a stationary bike.

Plaintiff stated that she can stand for ten minutes and walk for five to ten minutes, but cannot walk any long distance because of pain in her leg. She does not feel that she can put enough weight on her leg to stand or walk for a longer period. She also said she does not have good balance on that leg and she has to be very careful and take it slowly when going up or down steps.

6

[Plaintiff] testified that she has some painkillers prescribed by her doctor, but she mostly takes Aleve and Tylenol daily. She stated that she can sit longer than she can stand, but that she needs to elevate her leg because she cannot keep it in one position for more than 15 minutes. She said that, when she stands up, she has to wait to get the strength back in her leg before she can walk. She said she can only sit for 10 to 15 minutes unless she is in a lounge chair where she can stretch out her leg. She stated that she gets numbness or a burning sensation in her leg when she keeps it bent.

Plaintiff said she would be unable to sit for a full day, even if her leg was elevated, because she is very uncomfortable and gets a burning sensation in her leg when keeping it in either position. She testified that, when she is at home, she lies down for a while, then gets up and walks around for a few minutes, then lies down again. She said that she lies down for an hour at a time, for a few hours per day in total.

[Plaintiff] stated that she is working part-time as a bookkeeper. She said that bookkeeping is part of what she used to do. She testified that she worked as a meeting planner and was on her feet, doing special events or driving to and from the airport all the time. She said she learned bookkeeping because she billed her clients for the programs. She stated that she has no trouble completing her tasks at work now. She testified that, before her

accident, she was very active in her job and in maintaining her house and yard, and that she cannot do any of those activities any more. She stated that she is 55 years old and completed two years of college.

Plaintiff testified that she used to play golf and a little tennis and used to go dancing and to other social events with friends, but that she no longer can do any of those things. She said she can walk only five to ten feet before she experiences burning pain and discomfort from the back of her left knee to her ankle. She stated that she cannot lift more than ten pounds because she does not feel that she has enough support in both legs and her back to walk while carrying a lot of weight.

[Plaintiff] testified that she could not have worked full-time by December 2007 because she was still taking physical therapy and having a lot of difficulty getting around. She stated that she had worked part-time as a bartender for four years before the accident, earning about $50 per week.

## III. Vocational Expert Testimony[5]

A vocational expert, Crystal Younger, testified at the hearing. She stated that plaintiff's past relevant work as a secretary is sedentary, skilled work, while plaintiff's past job as an event planner is light, skilled work, according to the

---

[5]See (Rec. Doc. No. 17).  Citations have been omitted.

Dictionary of Occupational Titles.  She said that [Plaintiff's] application for benefits indicated that her past relevant work as a secretary was classified as light, while her past work as an event planner was classified as medium, so that both jobs were performed at higher exertion levels than the Dictionary of Occupational Titles provides for those jobs.

The ALJ posed a hypothetical of an individual with plaintiff's age, education and work history who could perform the full range of sedentary work. The vocational expert testified that the person could perform the past relevant work of secretary, as generally performed and as described in the Dictionary of Occupational Titles. When the ALJ modified the hypothetical to restrict the individual to sedentary work that would allow her to elevate her left leg below waist level at will, Younger said that her testimony would not change. In response to another hypothetical question, Younger testified that a person who was unable to sit, stand or walk for up to eight hours in a workday because she had to lie down each day for more than the usual two 15-minute daily break periods and the usual 30 or 60-minute lunch period would not be able to work at any job.

Upon cross-examination by plaintiff's attorney, the vocational expert testified that it would be more difficult to perform a job if the hypothetical person had to elevate her leg to waist level because the leg would not fit under a desk. Younger stated that the

numbers of available jobs would be significantly reduced because the person would need an accommodation to allow her to put her leg up on another chair. Plaintiff's attorney modified the ALJ's first hypothetical to include a restriction that the individual could not complete the assigned work because she is unable to concentrate as a result of pain. The vocational expert testified that a person who cannot complete the work would not be able to maintain employment, and that skilled jobs like secretary require some level of concentration. She explained that the mental skill level of secretarial work includes reasoning skills at a ninth through twelfth grade level and mathematical skills at a seventh to eighth grade level.  She said that the job includes a variety of duties, such as dealing with people and making judgments and decisions, but that it is not a very high level of concentration and decision-making.

**Plaintiff's Contentions**

Plaintiff raises two objections to the Magistrate's findings. First, Plaintiff argues that the Magistrate erred "because he did not ensure that the ALJ employed the proper legal standard when evaluating plaintiff's credibility." (Rec. Doc. No. 17 pg. 6). Plaintiff argues that pursuant to Social Security Ruling 96-7, "[w]hen evaluating the credibility of an individual's record and statements, the adjudicator must consider the entire case record

10

and give specific reasons for the weight given to the individual's statement." (Rec. Doc. No. 17 pg. 6). Plaintiff contends that the ALJ's decision "constitutes no more than conclusions unsupported by any specific rationale or specific reasoning other than that [Plaintiff] is not credible in violation of SSR 96-7p." (Rec. Doc. No. 17 pg. 7).

Second, Plaintiff argues that the Magistrate erred in finding that the ALJ applied the correct legal standard in assessing Plaintiff's residual functional capacity ("RCF"). (Rec. Doc. No. 17 pg. 10). Plaintiff contends that contrary to the ALJ's findings, there is substantial medical evidence in the case record establishing that Plaintiff is incapable "of performing work at the stated level of sedentary that the ALJ found." (Rec. Doc. No. 17 pg. 10). Additionally, Plaintiff argues that the Magistrate "erred in finding that the ALJ should not have given greater deference to the opinion of plaintiff's treating physician." (Rec. Doc. No. 17 pg. 10)

**Law and Discussion**:

**I. Standards of Review**

This Court's review is limited to determining whether 1) substantial evidence exists in the record, as a whole, to support the findings of the Commissioner; and 2) whether the Commissioner applied the proper legal standards in evaluating the evidence.

*Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (citation omitted).  Substantial evidence is more than a scintilla but less than a preponderance, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citation omitted).

Findings by the Commissioner which are supported by substantial evidence are conclusive and must be affirmed.  42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389 (1971). Such findings are conclusive and must be affirmed despite alternative conclusions which the court might also find to be substantially supported by the evidence. *Arkansas v. Oklahoma*, 503 U.S. 91, 112-113 (1992).  "The court does not reweigh the evidence in the record, try the cases *de novo*, or substitute its judgment for the Commissioners, even if the evidence weighs against the Commissioner's decision." *Newton*, 209 F.3d at 452.  The obligation to resolve conflicts in the evidence is one for the Commissioner, not for the courts.  *Id*.

To be considered disabled and thus eligible for DIB, a plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C.

12

§423(d)(1)(A); *Newton* 209 F.3d at 452.   The Commissioner uses a five step sequential process in determining whether a claimant is disabled within the meaning of the Act.[6]   *Newton*, 209 F.3d at 453 (citing 20 C.F.R. §404.1520).   The claimant has the burden of proof under the first four steps of the inquiry.   *Newton*, 209 F.3d at 453.   If Plaintiff successfully carries this burden, the burden shifts to the Commissioner under the fifth step to show that the claimant is capable of performing alternative work that exists in the national economy.   *Id*.   Thereafter, the burden is on the plaintiff to rebut her capability to perform alternative work.   *Id*.

The court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [her] age, education, and work history." *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995).

---

[6]The five-step evaluation process requires consideration of the following:
    1) Whether the claimant is not working in substantial gainful activity;
    2) Whether the claimant has a severe impairment;
    3) Whether the claimant's impairment meets or equals a listed impairment in Appendix 1 of the Regulations;
    4) Whether the impairment prevents the claimant from doing past relevant work; and
    5) Whether the impairment prevents the claimant from doing any other work.
*Newton*, 209 F.3d at 453 (citing 20 C.F.R. §404.1520).

## II. Analysis

### A. The Magistrate Applied the Proper Legal Standard In Determining Whether the ALJ Correctly Analyzed Plaintiff's Credibility

As stated by the Magistrate, "[t]he ALJ found that plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not supported by the medical evidence and were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment that [Plaintiff] is capable of performing sedentary work, as long as she can elevate her left leg below waist level." (Rec. Doc. No. 16 p. 11). Plaintiff argues that the Magistrate improperly found that the ALJ applied the correct legal standard in assessing Plaintiff's credibility. (Rec. Doc. No. 16 p. 11).

The ALJ is responsible for evaluating the credibility of witnesses. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *See also Spruill v. Astrue*, 299 F. App'x 356, 358 (5th Cir. 2008) ("credibility conclusions 'are precisely the kinds of determinations that the ALJ is best positioned to make.'"). As such, this Court must "accord great deference to the ALJ's credibility determination." *Newton*, 209 F.3d at 459. The ALJ must simply "articulate reasons for discrediting the claimant's complaints." *Spruill*, 299 F. App'x 356 at 358.

14

It is also "within the ALJ's discretion to determine the disabling nature of a claimant's pain, and the ALJ's determination is entitled to considerable deference." *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001)(citing *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991). As noted by the Fifth Circuit:

> The determination whether an applicant is able to work despite some pain is within the province of the administrative agency and should be upheld if supported by substantial evidence. Moreover, pain must be constant, unremitting, and wholly unresponsive to therapeutic treatment to be disabling Subjective complaints of pain must also be corroborated by objective medical evidence.

*Id.*

The Magistrate held that ALJ in this case adequately explained her reasons for finding the Plaintiff less than credible, and that these reasons were substantially supported by the record. (Rec. Doc. No. 16 p. 16).  The ALJ found that Plaintiff's testimony regarding her subjective complaints of severe pain and extreme functional limitations were not fully supported by the objective medical evidence. (Rec. Doc. No. 16 p. 13).  In summarizing the medical records, the ALJ noted that by September 2007, Plaintiff had

> pretty good range of motion with only occasional effusion. She was attending physical therapy and weight bearing with some diminished speed of ambulation but there were no neurological deficits. More importantly, the only pain medication taken was Tylenol for discomfort which she rated as just 5 out of 10. An x-ray in January 2008 showed everything in good position and alignment.

(Rec. Doc. No. 16 pgs. 13-14).

The ALJ further noted that Plaintiff "has been able to work part-time without any difficulty and that Plaintiff estimated the extent of her own recovery at 90 percent after one year of physical therapy, but believes that she can improve." (Rec. Doc. No. 16 p. 14).

The ALJ clearly explained her reasons for finding plaintiff less than credible and the reasons are substantially supported by the medical records.  Consequently, the ALJ applied the correct legal standard in assessing Plaintiff's credibility.

### B. The ALJ's Determination of Plaintiff's Residual Functional Capacity is Supported by Substantial Evidence

At step four of the sequential evaluation, the ALJ found that Plaintiff had the residual functional capacity to perform sedentary work, provided she could elevate her left leg below waist level. (Rec. Doc. No. 16 p. 17).  Plaintiff argues that the Magistrate erred in finding that the ALJ applied the correct legal standard in assessing Plaintiff's residual functional capacity because: 1) there is substantial medical evidence in the case record establishing that Plaintiff is unable to perform work "at the stated level of sedentary that the ALJ found"; and 2) the ALJ failed to give controlling weight to the opinion of Plaintiff's treating physician, Dr. Wilson.  (Rec. Doc. No. 17 p. 10).

16

As to her first sub-assignment of error, Plaintiff argues that she is incapable of performing light to sedentary level work because she sustained a left tibial plateau fracture, which is a "comminuted fracture classified as Schatzker VI (the most severe of the classifications in the Schatzker system)[7], with associated soft tissue injury." (Rec. Doc. No. 17 p. 10). Plaintiff contends that it would be unreasonable to find that she is capable of the stated sedentary work given her age and physical impairments. (Rec. Doc. No. 17 p. 11).

The Magistrate summarized the ALJ's findings as follows:

The ALJ reviewed the medical records and acknowledged that [Plaintiff] has a severe impairment, consisting of status post open reduction internal fixation of the left tibia. The ALJ disagreed with the initial administrative disability examiner's conclusion that Plaintiff failed to establish that her severe impairment could be expected to last at least 12 months. The ALJ found that, as of the date of her decision, Plaintiff still had ongoing pain that more than minimally limits her vocational abilities.

(Rec. Doc. No. 16 pgs. 17-18).

The Magistrate correctly concluded that "mere diagnosis of an impairment does not establish a plaintiff's disability claims." (Rec. Doc. No. 16 p. 18). Pain may be a basis for disability; however, it is not the existence of pain but whether it is so great as to interfere sufficiently with the ability to work. *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Impairments which can

---

[7]Tibial plateau fractures are classified into six classifications under the Schatzker system, with Schatzker I being the least severe and Schatzker VI being the most severe. See (Rec. Doc. No. 17 pgs. 10-11).

be reasonably treated or controlled cannot support a finding of disability. *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988). Therefore, Plaintiff "must show that she was so functionally impaired by her [diagnosed] impairment that she was precluded from engaging in any substantial gainful activity." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

The ALJ acknowledged the severity of Plaintiff's impairment, but ultimately concluded that Plaintiff's allegations about her functional limitations were not credible. (Rec. Doc. No. 16 p. 18). The Magistrate found that the ALJ's finding "is supported by substantial evidence that [Plaintiff's] fracture had healed, her tibia was well aligned on x-rays with no evidence of continued disunion and she had regained most of her range of motion." (Rec. Doc. No. 16 p. 18). Accordingly, the ALJ did not err in finding that Plaintiff was capable of performing light to sedentary level work.

As to her second sub-assignment of error, Plaintiff argues that the Magistrate erred in finding that the ALJ should not have given greater deference to the opinion of Plaintiff's treating physician, Dr. Wilson. (Rec. Doc. No. 17 p. 11). In September 2007, Dr. Wilson opined "that it may be longer than a year before [Plaintiff] is able to go back to the type of work she was doing before." (Rec. Doc. No. 16 p. 19). The ALJ accorded "little weight" to Dr. Wilson's statement because the ALJ found that it was

"inconsistent with the other medical evidence of the record" and "contradicted by the x-rays in January 2008 that show solid union. Because there are no clinical signs or findings of any complications, nonunion or infections, Dr. Wilson's opinion appears to be a patient advocacy statement rather than a medical source statement based on objective signs and findings." (Rec. Doc. No. 16 p. 19).

Regarding medical opinions from physicians, the Fifth Circuit has stated

> [S]ome opinions by physicians are not medical opinions, and as such have no "special significance" in the ALJ's determination. Among the opinions by treating doctors that have no special legal significance are determinations that an applicant is "disabled" or "unable to work," These determinations are legal conclusions that the regulation describes as "reserved to the Commissioner."

*Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003); *Chambliss*, 269 F.3d at 522; *Tamez v. Sullivan*, 888 F.2d 334 (5th Cir. 1989).

Dr. Wilson did not initially specify the "type of work that [plaintiff] was doing before" her accident." (Rec. Doc. No. 19 p. 20). The Magistrate found that

> Plaintiff was working as a special events planner and part-time bartender at the time of her accident.  The vocational expert testified that the event planner job was classified as light duty by the Dictionary of Occupational Titles, but that it was medium duty as Plaintiff had performed it.  The ALJ found that [Plaintiff] could only perform her past relevant work of secretary at a sedentary level, which is a lower exertional level than light or medium.

(Rec. Doc. No. 16 p. 20) (footnote omitted).

19

Based on Plaintiff's light or medium duty jobs at the time she was injured, and the Fifth Circuit's case law concerning the weight of a physician's nonmedical opinion, the Magistrate correctly found that the ALJ properly accorded no weight to Dr. Wilson's opinion that Plaintiff could not perform "the type of work that she was doing before."

Although the opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability, the ALJ may discount the weight of such an opinion when it is conclusory; unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence. *Newton*, 209 F.3d at 455-56 (citations omitted).

In the present case, the ALJ found that Dr. Wilson's statement was inconsistent with Plaintiff's medical records.  As addressed previously, Dr. Wilson found no significant difficulties with the healing of Plaintiff's fracture.  Specifically, Dr. Wilson found that Plaintiff had

> pretty good range of motion with only occasional effusion. She was attending physical therapy and weight bearing with some diminished speed of ambulation but there were no neurological deficits. More importantly, the only pain medication taken was Tylenol for discomfort which she rated as just 5 out of 10. An x-ray in January 2008 showed everything in good position and alignment.

(Rec. Doc. No. 16 pgs. 13-14).

The Magistrate found that the medical records are consistent

with the ALJ's assessment that Plaintiff could perform sedentary work.   (Rec. Doc. No. 16 p. 22).   Accordingly, the Magistrate properly found that the ALJ was not required to afford significant weight to Dr. Wilson's opinion that Plaintiff could not work.

**Conclusion**

As summarized by the Magistrate, substantial evidence supports the ALJ's findings concerning Plaintiff's credibility and residual functional capacity. Furthermore, the ALJ had good cause to give no weight to the nonmedical opinion of Dr. Wilson that plaintiff could not work and to accord little weight to Dr. Wilson's opinion to the extent that it was inconsistent with the entirety of the medical records.

For the foregoing reasons, **IT IS ORDERED** that Plaintiff's Objections to the Magistrate Judge's Report and Recommendation be **OVERRULED,** and the Magistrate Judge's Report and Recommendation is adopted as the opinion of the Court as it is supported by substantial factual evidence and applicable laws.

New Orleans, Louisiana this 28th day of February, 2011.

_____

UNITED STATES DISTRICT JUDGE